Dykman, J.
The Poughkeepsie Bridge Company desired to acquire land belonging to Eobert Sanford located in the city of Poughkeepsie, for the purpose of constructing and maintaining the bridge, appurtenances and avenues of approach. "
The acquisition of land for that purpose was lawful and legitimate under section 2 of chapter 897 of the Laws of 1871, which invested the corporation with power to purchase, acquire, hold and use as much real property as may be necessary for the site of the bridge, and for opening and maintaining proper and necessary avenues of approach to said bridge, with a prohibition against an extension of over two miles from each end of the bridge.
Section 13 of the same law clothed the corporation with the power to acquire any real estate required for its purposes as provided in that law by the exercise of the right of eminent domain, in the event of an inability to agree with the owner for the purchase thereof.
Under and in pursuance of that law and several subsequent statutes designed to continue the same in force and operation, the bridge company presented a petition to the court containing all the requisite statements and allegations- and prayed for the appointment of three disinterested commissioners to ascertain and appraise the compensation to be made to Eobert Sanford for the real property belonging to him and proposed to be taken for the purpose of construct *602 ing and maintaining the bridge and appurtenances and the avenues of approach thereto.
Mr. Sanford submitted an answer to the petition in which he denied no fact stated therein. But he stated in his answer that in the month of November, 1873, the bridge company made a map and profile of the bridge and its appurtenances and avenues of approach and adopted the same and filed it.
Further, he says, he is informed and believes the company has never lawfully made or filed any other map or profile of the bridge, its appurtenances or avenues of approach, and has not and cannot lawfully abandon, change or depart from the location shown by the map of 1873, and cannot lawfully appropriate, acquire or condemn any lands not embraced within the original location, and he denies that the company has or can locate the bridge, its appurtenances or avenues of approach to the bridge so that the same crosses or extends over or upon the land described in the petition.
Although this answer seems to present questions of law only yet both parties introduced proof before the court, •and at the close of the testimony, the prayer of the petition was granted, and an order was made which recited among other things the opposition to the appointment of the commissioners based upon the want of power in the company to acquire the lands described in the petition, and the overruling of the objection, and then granted the prayer ■of the petition and appointed the three commissioners.
From that order the land owner has appealed to this court and here he contends, as he did below, that there is no power in the corporation to change its lines or abandon its first location.
Without a full determination of the right of the bridge company to change any of its alignments, we find it easy to uphold this order. There is no charter provision requiring the location of all the avenues of approach in the first instance or at the same time, neither is the company limited to one avenue at each end. On the contrary by section 15 of the charter the avenues of approach are required to be located with a view to their connection with public highways, laid out or proposed to be laid out, and with the roads of railroad corporations proposing to use the bridge; and the bridge corporation is required to allow any railroad corporation formed and organized, or thereafter to be formed and organized, to connect their roads with the avenues or approaches to and from the bridge, on which rails may be placed for the passage of railroad trains.
Section 12 of the charter also points towards future ne *603 •cessities and a multiplicity of approaches to the bridge by providing that any railroad corporation whose road shall have a terminus at the bridge, or shall connect with the same or either of its avenues of approach, or shall run its trains in. connection with any railroad having such terminus or connection with such avenues of approach, shall be permitted to use the bridge and avenues of approach for railroad purposes. No preference in the use of the bridge, its appurtenances and avenues of approach shall be given to one railroad corporation over another, and it is made unlawful for any corporation or party whose road shall have a terminus at the bridge to construct a railroad track across, over or above any of the avenues of approach to the bridge without permission from the board of directors of the bridge or the legislature of the state.
So the provisions respecting avenues look to future contingencies and contemplate new avenues of approach to the bridge whenever they become necessary to enable the bridge or corporation to discharge its charter obligations.
Again, by the last amendment of the charter by chapter <695 of the Laws of 1887, section 1 is amended so as to create certain persons a body corporate and politic by the name of the Poughkeepsie Bridge Company for the purpose of constructing and maintaining a permanent bridge, appurtenances and avenues of approach thereto for the passage of railroad trains, and section 7 of the original charter is repealed.
The avenues of approach to this bridge may now be railroads two miles in length on either side, and section 15 of the charter requires the bridge company to allow any railroad corporation organized in the future to connect with such avenues, and if the approaches located at first prove insufficient, a fair construction of the charter and its amendments would authorize and require the bridge corporation to provide others.
The question of abandonment is not so paramount as the counsel for the appellant seems to suppose. The bridge corporation has decided to construct an avenue of approach to the bridge from the east on a new line, and section 2 of the charter authorizes the corporation to acquire as much real estate as may be necessary for opening and maintaining proper and necessary avenues of approach to the bridge.: The corporation deems the land proposed to be taken by ’ this proceeding necessary and the court has decided that it was so.
The order should be affirmed, with ten dollars costs and( ¡disbursements.